A09A2339. CLARKE v. FREEMAN et al.
A09A2340. CHRISTY v. FREEMAN et al.
(692 SE2d 80)

DOYLE, Judge.

This case arises from the events of March 11, 2005, when Brian Nichols escaped Fulton County deputies while awaiting trial at the

---

Fulton County Courthouse and killed several individuals, including Judge Rowland Barnes, before surrendering in the suburbs north of Atlanta. Appellants Susan Christy and Gina Clarke (collectively "the Appellants"), who worked as case manager and assistant case manager to Judge Barnes at the time of the incident, instituted these suits against Fulton County Sheriff Myron Freeman and various other individuals, which suits we have consolidated for the purposes of appeal. The trial court granted the defendants' motions to dismiss the suits, and we now reverse, for the reasons that follow.

We review de novo a grant of a motion to dismiss a complaint,[1] understanding that

> [a] motion to dismiss should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. All facts in the pleadings are to be construed in the light most favorable to the plaintiff with all doubts resolved in his favor even though unfavorable constructions are possible.[2]

Taking the Appellants' pleadings as true, at the time of the events in question, Defendant Myron Freeman was the Fulton County Sheriff, Defendant Lucious D. Johnson was a Major in the Jail Division of the Fulton County Sheriff's Department ("the Department"), Defendant Chelisa Lee was a Captain in the Court Services Section of the Department, Defendant Twantta Clerk-Mathis was a Captain in the Court Services Section of the Department, Defendant Jerome Dowdell was a Sergeant in the Training Division of the Department, Defendant Grantley White was a Sergeant in the Court Services Section of the Department,[3] Defendant Paul Tamer was a Deputy Sheriff III in the Court Services Section of the Department, and Defendant Alphonso Wright was a Civilian-Security Specialist in the Court Services Section of the Department.

In 2004, Brian Nichols was charged with rape, aggravated assault, and burglary, and his second trial on those charges was set to begin on March 7, 2005. In February 2005, Defendant Dowdell was informed of threats made by Nichols that he was planning to overpower a deputy, take the deputy's weapon, and escape. Although Dowdell alerted Officer Jenkins of the Court Services Division of the

---

[1] See *Hedquist v. Merrill Lynch &c., Inc.*, 284 Ga. App. 387 (643 SE2d 864) (2007).

[2] (Citations and punctuation omitted.) *Ford v. Whipple*, 225 Ga. App. 276, 277 (483 SE2d 591) (1997).

[3] White is named as a defendant only in Gina Clarke's amended complaint.

Department of the threat, he did not inform Jenkins of the specifics of what he learned and merely told the officer that Nichols threatened to "act out" if the verdict did not go his way. Dowdell also failed to follow numerous Department procedures after learning of Nichols's threat, which would have increased security around Nichols; however, Dowdell met with Nichols at the County Jail and told him "not to do anything stupid."

Officer Jenkins informed Deputy Rene of Nichols's threat to "act out," which Rene announced at the Courthouse Officers' roll call on February 25, 2005. Defendant Chelisa Lee was present at the roll call, as was Defendant Grantley White, who was Rene's supervisor and who was assigned to Judge Barnes's courtroom. White questioned Rene further about the threat and was directed to Jenkins by Deputy Rene; Jenkins directed White to Dowdell. Dowdell did not tell White about the specifics of Nichols's threat when White questioned him about it.

Defendant White and Deputy Jenkins spoke to Defendant Lee about Nichols's threat, but Lee failed to follow proper Department procedures regarding such information (such as increasing security around Nichols) or to investigate the threat. She also failed to report the information to her superior officers or to the members of her staff, including Deputy Gary Reid, who was responsible for security in Barnes's courtroom.

On March 9, 2005, as Nichols's trial was proceeding, Deputy Jenkins discovered a homemade metal weapon on Nichols while at the courthouse. When Nichols was transported back to the jail, another deputy submitted the recovered weapon to Defendant Clerk-Mathis, who was the Acting Watch Commander that evening. Although Defendant Clerk-Mathis noted the confiscation in the Watch Commander log, she failed to report the contraband to her superior and failed to follow numerous Department procedures such as assigning to Nichols specific prisoner designations or classifications, investigating the matter further, or maintaining the proper chain of custody over the weapon.

Defendant Johnson oversaw daily jail operations on March 10, 2005, and he reviewed the Watch Commander log containing Defendant Clerk-Mathis's entry regarding the weapon confiscated from Nichols; however, Defendant Johnson failed to follow numerous Department procedures regarding investigation of the weapon or remedial action regarding Nichols.

Deputy Jenkins reported his discovery of Nichols's weapon to Defendant Lee on the evening of March 9. On March 10, Lee also was provided with a copy of a report regarding the weapon, but at the courthouse roll call, Defendant Lee failed to disseminate thorough or specific information regarding confiscation of Nichols's weapon to

courthouse officers, and she merely gave the officers a general warning to be careful. Lee failed to increase security or take other steps regarding Nichols and failed to follow numerous department procedures regarding the issue.

On the morning of March 11, 2005, Deputy Gary Reid, who was the unit manager for the eighth floor (on which floor Judge Barnes's courtroom was located) and who was responsible for security on that floor, was absent from work. In addition to Reid's violation of Department policy by misusing sick leave and by failing to take appropriate action to ensure sufficient security coverage on the eighth floor, Reid's supervisor, Defendant Lee (who was notified of Reid's absence that morning), did not take proper steps to direct replacement security to Reid's post.

Later that morning, as Nichols was transported by a single deputy from the detention area of the courthouse to Judge Barnes's courtroom (in violation of Department policy that required two deputies to transport prisoners to that wing of the courthouse), Defendant Lee sent Defendant Wright (who was assigned to Central Control[4] as a Security Specialist) to get her breakfast. This action left only one individual staffing Central Control, in violation of Department policy.

Defendants Tamer and Wright were assigned to Central Control on the morning of March 11 and were responsible for reconfiguring the security camera feeds from overnight views of building entrances and exits to internal locations, such as holding cells, detention areas, and corridors. Additionally, Tamer and Wright were responsible for keeping Central Control manned with at least two individuals at all times. Tamer and Wright failed to reconfigure the surveillance system, and the two were absent from Central Control when Nichols overpowered Deputy Cynthia Hall in the eighth floor holding cell, which would have appeared on the Central Control video feed if properly configured. In addition to Defendant Lee's violation of policy in sending Defendant Wright away from Central Control to get her breakfast, Defendant Tamer then left Central Control without any staff to monitor the cameras or alarms. Moreover, neither Defendant Wright nor Defendant Tamer notified their superiors that they were leaving their posts at Central Control.

Defendant Freeman is charged with attending (personally or through a deputy) all sessions of the Superior Court of Fulton County. On March 11, 2005, Defendant Freeman had delegated to Defendant White the responsibility of attending court sessions in

---

[4] Central Control contained live video monitors receiving feeds from throughout the courthouse, received emergency assistance request signals from alarms found in judges' chambers and other locations, and dispatched officer assistance in the event of emergencies.

Judge Barnes's courtroom; however, White left the courtroom to get breakfast prior to Nichols's case. White did not notify any supervisor that he would be leaving the courtroom unattended by a representative of the Sheriff and did not take action to have the courtroom secured during his absence, violating a number of Department policies.

After overpowering Deputy Cynthia Hall and taking her gun, Nichols proceeded to Judge Barnes's chambers, where he encountered the Appellants. He pointed the gun at the two women and ordered them into the Judge's chambers, where they secretly pressed the distress alarm, which activated a loud sound in Central Control and a visual notification on the video monitors there. Because Defendants Wright and Tamer had left Central Control unmanned, no one was available to respond to the alarm. Additionally, when Defendant Tamer thereafter discovered the alarm signal, he failed to immediately dispatch assistance to the chambers.

After threatening to kill the Appellants and then handcuffing them, Nichols left the Judge's chambers and proceeded into the Judge's courtroom, shooting and killing Judge Barnes and court reporter Julie Ann Brandau.

The Appellants filed complaints and amended complaints, asking for special, general, and punitive damages arising from the false imprisonment, assault, and infliction of emotional distress[5] that occurred on March 11 when they encountered Nichols, and alleging that the facts above constituted wilful, wanton, or malicious negligence or reckless misconduct and breach of the defendants' duties to protect the Appellants and their co-workers from Nichols. The Appellants contended that the wilful, wanton, or malicious actions resulted in their assault, false imprisonment, and emotional distress.

The defendants filed motions to dismiss the complaints based on the Appellants' failures to state a claim upon which relief can be granted. The trial court granted the motions to dismiss, and this appeal followed.

1. The Appellants argue that the trial court erred by dismissing their emotional distress claims. The trial court determined that the Appellants' claims were barred by Georgia's "impact rule" because the defendants' behavior, which may have constituted malicious, wilful, or wanton behavior, was not directed toward the Appellants.[6] We disagree with the trial court's conclusion and reverse.

---

[5] Appellant Christy's husband also alleged a derivative claim of loss of consortium.

[6] For our purposes, the Appellants do not dispute the trial court's conclusion that they do not allege physical injuries resulting from physical impacts as required to proceed under the impact rule. See *Jordan v. Atlanta Affordable Housing Fund*, 230 Ga. App. 734, 735 (1) (498 SE2d 104) (1998); *Ford*, 225 Ga. App. at 277.

> Georgia applies the impact rule to cases in which a party seeks to recover for emotional distress in a claim involving negligent conduct. The impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. A party claiming negligent infliction of emotional distress must therefore show a physical impact resulting in physical injury. On the other hand, where the defendant's conduct is malicious, wilful, or wanton, recovery can be had without the necessity of an impact.[7]

In addition to alleging facts that could show that the defendants' behavior was malicious, wilful, or wanton, to meet this exception to the impact rule, the Appellants also must allege sufficient facts that could show that the defendants' behavior was directed at them.[8] Malicious, wilful, or wanton behavior that threatens the public in general is not a sufficient showing; the conduct must be directed at a specific person or group of people in order to fall within the exception.[9]

Taking the facts in the complaint as true, the defendants either (1) were aware of a specific threat to the employees of Judge Barnes's chambers based on Nichols's statements, (2) were aware that a weapon was confiscated from Nichols during the course of his trial in that courtroom, or (3) failed to man Central Control, which was responsible for overseeing security in that courtroom, and/or to respond to distress calls made to Central Control. At this stage of the proceedings, we simply cannot say as a matter of law that the Appellants failed to sufficiently allege claims based solely on emotional injuries due to one or more of the defendants' wilful, wanton, or malicious conduct that was directed toward the members of

---

[7] (Punctuation and footnotes omitted.) *Hang v. Wages & Son Funeral Home*, 262 Ga. App. 177, 179-180 (585 SE2d 118) (2003). See also *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992).

[8] See *Ford*, 225 Ga. App. at 278 ("Disregard of general consequences is a part of wanton behavior, but the exception to the impact rule requires more; the wantonness must be directed to the plaintiff.").

[9] See id. Compare *Pike Nurseries v. Allen*, 253 Ga. App. 312, 313 (2) (558 SE2d 834) (2002) (determining that negligent conduct that could have injured any customer within a store was not sufficiently directed at a person or class of people) and *Ford*, 225 Ga. App. at 278 (holding that malicious conduct directed toward any person conceivably in the path of the defendant motorist also was not sufficiently directed toward the plaintiff in order to allow a cause of action under the exception) with *Johnson v. Allen*, 272 Ga. App. 861, 865-866 (2) (613 SE2d 657) (2005) (holding that malicious behavior directed solely at female employees was directed at a discrete subclass of individuals such that application of the exception to the impact rule was appropriate).

Judge Barnes's chamber (by virtue of the defendants' alleged knowledge of Nichols's threat or possession of a weapon) or at a discrete and limited group of court employees who had access to and were instructed to use the distress alarms in case of emergency. As we stated above, "no complaint should be dismissed on motion unless it affirmatively appears that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim."[10] Accordingly, we reverse the trial court's dismissal of the Appellants' emotional distress claims on the basis of the impact rule.

2. Next, the Appellants argue that the trial court erred by dismissing their claims for intentional infliction of emotional distress, false imprisonment, and assault. The defendants contend that, as a matter of law, they cannot be held vicariously liable for these intentional torts, which were committed by Nichols, while the Appellants maintain that they have sufficiently alleged facts to establish that the defendants' negligence was the proximate cause of these torts. We agree with the Appellants and reverse the trial court's order with regard to these claims.

Normally, questions of proximate cause and negligence are reserved for a jury; however, in some clear cases, the trial court may decide the issue as a matter of law.[11] For instance, in most cases, "an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury ... unless the intervening criminal act is a reasonably foreseeable consequence of the defendant's negligen[ce]."[12]

As the defendants correctly state, most Georgia cases addressing this area have concluded that a jailer's negligence is not the proximate cause of a bystander's injury when committed by an escaped prisoner.[13] Nevertheless, those cases do not involve allegations such as those presented in this complaint, which include known threats made by a prisoner. Accordingly, we reverse the trial court's dismissal of these claims because, at this stage of the proceedings, the Appellants have alleged sufficient facts that, if proven, could sustain a finding that the foreseeable result of the defendants' negligence was Nichols's violence against Judge Barnes and his staff.

3. Next, Defendant Tamer urges us to uphold the trial court's dismissal order under our "right for any reason rule" on the basis

---

[10] (Emphasis omitted.) *Dittler Bros., Inc. v. AMR Intl.*, 142 Ga. App. 570, 571 (3) (236 SE2d 544) (1977). See also *Ford*, 225 Ga. App. at 277.

[11] See *Collie v. Hutson*, 175 Ga. App. 672, 673 (2) (334 SE2d 13) (1985).

[12] (Punctuation omitted.) Id.

[13] See, e.g., id. at 673 (2); *Henderson v. Dade Coal Co.*, 100 Ga. 568, 573 (28 SE 251) (1897).

that the Appellants' exclusive remedy is via the Workers' Compensation Act. We decline to do so at this time.

In its dismissal orders in these cases, the trial court explains that it addressed the workers' compensation issue in an order in a related case, and the court repeats its ultimate conclusion from that order — the defendants owed a special duty to the plaintiff's decedent, removing the case from the Workers' Compensation Act's exclusivity provision. We have not, however, been provided with a copy of that order. Moreover, it appears from the complaint that the Appellants have not alleged physical injuries, which would also remove this case from the scope of the Workers' Compensation Act, so dismissal on the basis of the exclusivity provision appears to be premature at this juncture of the proceedings.[14]

4. Finally, because of our conclusion in Division 1 of this opinion, we reverse the trial court's dismissal of Robert Christy's derivative loss of consortium claim.[15]

*Judgments reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 15, 2010 — 

*Scherffius, Ballard, Still & Ayres, Andrew M. Scherffius III, Gregory R. Feagle, Kam, Ebersbach & Lewis, Randy J. Ebersbach,* for appellants.

*Cruser & Mitchell, William T. Mitchell, Karen E. Woodward, Doffermyre, Shields, Canfield, Knowles & Devine, Ralph I. Knowles, Jr., Sheryl L. McCalla, Freeman, Mathis & Gary, Theodore Freeman, Jack R. Hancock, Pamela F. Everett, Daley, Koster & LaVallee, Matthew R. LaVallee, Robert D. Ware, Meka B. Ward,* for appellees.

---

[14] See, e.g., *Betts v. Medcross Imaging Center*, 246 Ga. App. 873, 874 (1) (542 SE2d 611) (2000) ("Psychological injury, not preceded by or accompanied by physical injury, is not compensable under the Workers' Compensation Act.").

[15] See *Canberg v. City of Toccoa*, 255 Ga. App. 890, 892-893 (3) (567 SE2d 21) (2002) (holding that a husband's loss of consortium claim survives because his wife stated a claim for intentional infliction of emotional distress).