A10A0201. DOWDELL et al. v. WILHELM et al.
A10A0202. CLERK-MATHIS et al. v. WILHELM et al.
A10A0203. TAMER et al. v. WILHELM et al.
(699 SE2d 30)

DOYLE, Judge.

These related cases arise from the events of March 11, 2005, when Brian Nichols escaped Fulton County Sheriff deputies while awaiting trial at the Fulton County Courthouse and later shot and killed David Wilhelm in Wilhelm's northwest Atlanta home. Appellants were employed as deputies and were named as defendants in a wrongful death suit filed by Candee Wilhelm as David's surviving spouse and as executrix of his estate. The appeals, which we have consolidated for review, come from the denial of Appellants' motions for summary judgment: Jerome Dowdell and Chelisa Lee in Case No. A10A0201, Twantta Clerk-Mathis and Grantley White in Case No. A10A0202, and Paul Tamer and Gary Reid in Case No. A10A0203. Because Nichols's criminal act of shooting David Wilhelm was the superseding proximate cause of the plaintiff's injuries, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Nichols had been arrested in

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

2004 for rape, false imprisonment, aggravated assault, and burglary, and he was awaiting trial in Fulton County for those charges in March 2005. At that time, Dowdell was a sergeant in the Training Division. In February 2005, a church pastor alerted Dowdell that he had learned that Nichols planned to overpower an officer and take the officer's weapon in order to escape from custody. Based on this information, Dowdell informed a Department detention officer that Nichols might "act out" if the jury returned a verdict against him. Dowdell did not specifically report that Nichols planned to overpower an officer and take a weapon to escape, nor did he himself report the information to his direct superior.

The detention officer relayed the information to another officer, who announced at the subsequent morning roll call that Nichols might "act out" if the jury returned a guilty verdict. Present at the roll call was White, who spoke to Dowdell and then relayed certain additional information to Lee, a captain in the Department's Court Services Section responsible for deployment of officers within the courthouse, and Reid, a lieutenant in the Courtroom Services Section.

On March 9, 2005, an officer searched Nichols and discovered an improvised weapon hidden in Nichols's shoes. The officer delivered the weapon and a written incident report to Clerk-Mathis, a lieutenant in the Jail Division who was on duty as the jail watch commander. Clerk-Mathis entered the information in the watch commander's log book, but she did not inform her captain nor did she order Nichols on "lock down" status or search his cell. At the next morning roll call, the discovery of the weapon was announced.

Lee provided a copy of the written incident report to Reid, a lieutenant in the Courtroom Services Section responsible for general security on the floor of the courthouse where Nichols was being tried by Judge Rowland Barnes. Reid's duty station was outside Judge Barnes's chambers, and on March 11, 2005, Reid was absent from work and had failed to ensure adequate coverage for his post. Also on that morning, Tamer, a deputy sheriff, and Wright, a civilian-security specialist employed by the Department, were staffing the central control room, which contained monitors of the courthouse closed circuit cameras, including those in the area where Nichols was held. Lee asked Wright to get her breakfast, and around that time Tamer allegedly vacated the control room to attend to his paramedic gear.

As Nichols was being escorted by a single female deputy within the courthouse holding area, he overpowered her and obtained a service weapon. Nichols then proceeded to Judge Barnes's chambers and threatened and subdued his staff, who activated a duress alarm. As the alarm sounded in the unmanned control room, Nichols

entered Judge Barnes's courtroom, where he shot and killed Judge Barnes and court reporter Julie Ann Brandau.

Nichols then fled from the courthouse and shot another deputy outside. After hijacking multiple cars at different parking garages in the area, Nichols eventually escaped from the area on a subway train. Nichols traveled approximately six miles from the courthouse to northwest Atlanta, where, several hours later, he encountered and shot David Wilhelm, a federal immigrations and customs agent who was off duty at his partially constructed home.[2]

Candee Wilhelm filed a wrongful death claim on behalf of herself and a claim on behalf of David Wilhelm's estate against Appellants and various other defendants within the Fulton County Sheriff's Department. The claims alleged that various negligent acts committed by the deputies caused David's death when he was shot by Nichols. Following a limited discovery period, the Appellants unsuccessfully moved for summary judgment on several grounds, giving rise to this appeal.

On appeal, Appellants argue, and we agree, that the trial court erred in concluding that Appellants' alleged negligence can be shown to be the proximate cause of David Wilhelm's death. "[N]egligence is not actionable unless it is the proximate cause of the injury. A wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but *only for a consequence which is probable*, according to ordinary and usual experience."[3]

Normally, questions of proximate cause are for the jury, but plain and indisputable cases such as this may be decided by the court as a matter of law.[4] "[T]he inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery."[5]

For example,

> [g]enerally, an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury superseding any negligence of the defendant unless

---

[2] Certain undisputed background facts recited herein are taken from the police investigation relied upon by both parties.

[3] (Punctuation omitted; emphasis supplied.) *Morris v. Baxter*, 225 Ga. App. 186, 187 (483 SE2d 650) (1997).

[4] See *Collie v. Hutson*, 175 Ga. App. 672, 673 (2) (334 SE2d 13) (1985).

[5] (Punctuation omitted.) Id. See also *Hercules, Inc. v. Lewis*, 168 Ga. App. 688, 688-689 (309 SE2d 865) (1983).

the intervening criminal act is a reasonably foreseeable consequence of the defendant's negligent act.[6]

Therefore, given Nichols's intervening criminal act of shooting David Wilhelm, the question is whether that criminal act was a reasonably foreseeable consequence of the Appellants' conduct. "Foreseeable consequences are those which are *probable*, according to ordinary and usual experience, those which, because they happen so frequently, may be expected to happen again. One is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and *slightly probable*."[7]

Here, the intervening criminal act occurred at Wilhelm's home approximately six miles from the courthouse and several hours after Nichols had escaped. Addressing the underlying facts of this case in *Clarke v. Freeman*,[8] where the plaintiffs were courthouse employees arguing essentially the same theories of negligence against members of the Fulton County Sheriff's Department, this Court noted that "most Georgia cases addressing this area have concluded that a jailer's negligence is not the proximate cause of a bystander's injury when committed by an escaped prisoner."[9] Nevertheless, we ruled in *Clarke* that at the motion to dismiss stage of the proceedings, the plaintiffs had alleged sufficient facts to sustain a finding of forseeability based on the facts of that case because the intervening criminal act was Nichols's violence against Judge Barnes and his staff *within the courthouse itself, just as the deputies had been warned Nichols would attempt*.[10] By contrast, the criminal act here, the post-escape fatal shooting of a bystander with no connection to Nichols at the bystander's home six miles away from the locus of Nichols's escape, is not a "*consequence which is probable*, according to ordinary and usual experience."[11]

---

[6] (Punctuation omitted.) *Collie*, 175 Ga. App. at 673 (2).

[7] (Punctuation and citations omitted; emphasis supplied.) *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 894 (1) (595 SE2d 517) (2004).

[8] 302 Ga. App. 831 (692 SE2d 80) (2010).

[9] Id. at 837 (2).

[10] See id.

[11] (Emphasis supplied.) *Morris*, 225 Ga. App. at 187. See also *Brown*, 265 Ga. App. at 894 (1) ("forseeable consequences are those [that] are probable") (punctuation omitted); *Cope v. Enterprise Rent-A-Car*, 250 Ga. App. 648, 651 (2) (551 SE2d 841) (2001) ("So long as it affirmatively appears that the mischief is attributable to the original wrong as a result which might reasonably have been foreseen as *probable*, legal liability continues . . .") (punctuation omitted; emphasis supplied); *Collie*, 175 Ga. App. at 673 (2). We find distinct from the present case *Schernekau v. McNabb*, 220 Ga. App. 772, 773 (470 SE2d 296) (1996), which addressed the forseeability of the particular injury and found a causal link between sending an 11-year-old boy on a camping trip with an air gun and a boy getting shot on the trip. It was forseeable that a boy would be injured on the trip, as it was forseeable that Nichols would injure someone at

This result is not changed by allegations or evidence that the deputies knew or should have known of Nichols's plan to escape. Our conclusion assumes their breach of courthouse duties and is based on the remoteness of the deputies' alleged malfeasance from David Wilhelm's death. As we held in *Clarke*, Nichols's criminal acts *at the courthouse during the escape* were foreseeable as probable consequences of his escape attempt.[12] However, Nichols's subsequent criminal act of shooting David Wilhelm much later in the day, six miles away from the courthouse, was not a probable consequence. Even in a case where a convicted felon had escaped five times in twelve years and was known by his custodians to be "immoral, brutish, devilish, of vicious habits, [and] not restrained by any convictions of right and wrong," the Supreme Court held "without difficulty" that his custodians' negligence was not the proximate cause of a rape committed by the prisoner upon his escape.[13] Similarly, the present case is distinct from those in which the custodian had reason to know that the post-escape criminal act would be committed.[14] Here, Appellants were warned that Nichols would attempt to violently escape, not that he would thereafter commit a crime later in the day in a different part of the city. Therefore, although the deputies' alleged malfeasance might have been the cause in fact of some injuries that ensued on March 11, 2005, Nichols's intervening criminal act of shooting David Wilhelm at his home six miles from the courthouse was the superseding proximate cause of Wilhelm's death.

2. The remaining enumerations are moot.

*Judgments reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MAY 27, 2010 —
RECONSIDERATION DENIED JULY 9, 2010 — 

*Cruser & Mitchell, Karen E. Woodward,* for appellants (case no. A10A0201).

---

the courthouse during the escape described in the warning to deputies. However, the criminal act here falls outside of that scope.

[12] *Clarke*, 302 Ga. App. at 837 (2).

[13] *Henderson v. Dade Coal Co.*, 100 Ga. 568, 568, 573 (28 SE 251) (1897). See also *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 528 (4) (b) (486 SE2d 917) (1997) (holding that defendants' malfeasance was not the proximate cause of an attack by an inmate at a private residence even though the defendants condoned a practice of routinely allowing inmates on outside work detail to leave their assigned duties to search for property to steal in nearby homes) (physical precedent only).

[14] See, e.g., *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982) (mental health patient's intervening criminal act of killing his wife was forseeable in light of evidence that mental health hospital staff knew that patient threatened to and would likely cause bodily harm to his wife if he had the opportunity).

*Freeman, Mathis & Gary, Sun S. Choy, Paul I. Hotchkiss*, for appellants (case no. A10A0202).

*Williams, Morris & Waymire, Terry E. Williams, Jason C. Waymire*, for appellants (case no. A10A0203).

*Hill, Kertscher & Wharton, Douglas R. Kertscher, Blakely H. Frye, Hasty Pope, Marion T. Pope, Jr.*, for appellees.