41912. CENTRAL ANESTHESIA ASSOCIATES, P.C. et al.
v. WORTHY et al.
41913. CASTRO v. WORTHY et al.
41914. MOOREHEAD v. WORTHY et al.
41915. EXECUTIVE COMMITTEE OF THE BAPTIST
CONVENTION OF THE STATE OF GEORGIA
d/b/a GEORGIA BAPTIST MEDICAL CENTER
v. WORTHY et al.
(333 SE2d 829)

HILL, Chief Justice.
We granted certiorari in this medical malpractice case to determine whether the trial court erred in finding the defendants negligent per se based on OCGA § 43-26-9 (b). The Court of Appeals affirmed. *Central Anesthesia Assoc. v. Worthy,* 173 Ga. App. 150 (325 SE2d 819) (1984).

Mrs. Brenda Worthy gave birth to a baby boy without anesthesia at Georgia Baptist Hospital in September 1981, and the next day had a tubal ligation, a form of sterilization, which was performed by her obstetrician-gynecologist, Dr. C. R. Moorehead, assisted by Dr. John Moore, an intern employed by the hospital. Central Anesthesia Associates, P.C. (CAA), a professional corporation of 8 anesthesiologists (3 of whom, Drs. Mani-Murugiah, Julio P. Cortes and T. R. Shantha, are individual defendants here), administered the anesthesia through Bonnie Gayle Castro, a registered nurse enrolled as a senior student nurse anesthetist in the school of anesthesia which was operated at the hospital by CAA. At the time of induction, Castro was under the supervision of David Krencik, a physician's assistant employed by CAA. Allegedly as the result of improper anesthesia procedure, Mrs. Worthy suffered a cardiac arrest with consequent brain damage and today remains in a coma.

Mr. and Mrs. Worthy sued CAA, student nurse anesthetist Castro, physician's assistant Krencik, the 3 CAA anesthesiologists named above, ob-gyn Moorehead, intern Moore, and Georgia Baptist Hospital.

Discovery disclosed that at the time of the occurrence in question, Dr. Moorehead, Dr. Moore and nurse Castro were in the seventh floor operating room where the surgery was being conducted. Physician's assistant Krencik had been present when nurse Castro began administering the anesthesia but Krencik left for 10 to 15 minutes,

during which period Mrs. Worthy's complications arose. At the time in question, 4 of CAA's 8 anesthesiologists were not at the hospital. Another was attending an open heart surgery patient and had no responsibility for Mrs. Worthy's treatment. Dr. Cortes was CAA's officer of the day and was in his office on the second floor of the hospital. He denied assigning Castro or Krencik to conduct the procedure and denied having any knowledge of the case until he entered the seventh floor operating room in response to the emergency alarm.

Nurse Castro decided that anesthesia should be administered by mask and authored the anesthesia plan. She placed Dr. Shantha's name on the preoperative consultation which prescribes the anesthesia plan, and which must be approved by an anesthesiologist, but Dr. Shantha denied having signed or approved the plan. Nurse Castro placed Dr. Mani's name on the anesthesia record as the responsible anesthesiologist, but Dr. Mani denied having any involvement with Mrs. Worthy's treatment.

Plaintiffs' expert found that Mrs. Worthy's treatment and care failed to meet the proper standard of care in, among other things, the performance of a postpartum sterilization by administering anesthesia using a mask instead of an endotracheal tube, permitting an unlicensed student to administer anesthesia under the supervision of a physician's assistant, and failure to properly oxygenate the patient during the administration of anesthesia.

The plaintiffs moved for partial summary judgment on the issue of negligence per se for violating OCGA § 43-26-9 (b), and certain of the defendants made motions for summary judgment. The trial court granted the plaintiffs' motion against all of the defendants (except intern Moore), reserving the issues of proximate cause and damages. The defendants appealed to the Court of Appeals.

The Court of Appeals affirmed as to CAA, nurse Castro, physician's assistant Krencik, and the 3 named anesthesiologists, holding that all of these defendants had breached their statutory duty in allowing an uncertified student nurse anesthetist to administer anesthesia while not "under the direction and responsibility" of an anesthesiologist as required by OCGA § 43-26-9 (b), supra. The Court of Appeals also held that the hospital, which used a surgical consent form stating that anesthesia would be administered under the direct supervision of an anesthesiologist of CAA, and which contracted with CAA to operate the school of anesthesia to which it lent its name, facilities, funding and services, and which contemplated use of student anesthetists, had also violated its legal duty by knowingly permitting CAA to violate OCGA § 43-26-9, supra.

Partial summary judgment was reversed as to ob-gyn Moorehead because the plaintiffs had not proved by expert witnesses whether or not the surgeon was charged with a duty to see that at least a mini-

mum standard of care was supplied to his patient. On certiorari, Dr. Moorehead contends that as a matter of law he met all of his responsibilities and that his motion for summary judgment should have been granted, but we did not grant certiorari on this point and decline to reach it now.[1]

1. OCGA § 43-26-9 (b) provides: "In any case where it is lawful for a duly licensed physician practicing medicine under the laws of this state to administer anesthesia, such *anesthesia may also lawfully be administered by a certified registered nurse anesthetist, provided that such anesthesia is administered under the direction and responsibility of a duly licensed physician with training or experience in anesthesia.*" (Emphasis supplied.) It is uncontradicted in the record before us that nurse Castro was a student, not a certified registered nurse anesthetist (CRNA). Moreover, each of the available anesthesiologists has denied that nurse Castro was administering anesthesia under his direction and responsibility. Thus, we find, as did the trial court and the Court of Appeals, a violation of OCGA § 43-26-9 (b) as a matter of law.

We therefore adopt the reasoning of the Court of Appeals in holding that the trial court properly granted partial summary judgment against CAA, the 3 CAA defendant doctors, nurse Castro and physician's assistant Krencik, for having violated OCGA § 43-26-9 (b). As pointed out by the Court of Appeals, *Central Anesthesia Assoc. v. Worthy*, supra at 153, negligence per se supplies only the duty and breach of duty elements of a tort, and the plaintiffs must still prove a causal connection (proximate cause) between the breach of this statutory duty and the injuries sustained by Mrs. Worthy, as well as their damages. See generally *Sutter v. Hutchings*, 254 Ga. 194, 196-197 (327 SE2d 716) (1985); *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). In addition, other theories of negligence remain for resolution by a jury. *Central Anesthesia Assoc. v. Worthy*, supra at pp. 156-57.

CAA and its associates argue that the Court of Appeals overlooked relevant statutes and rules of the Georgia Board of Nursing in concluding that the statute has been breached as a matter of law.

CAA first points to the Georgia Board of Nursing rule 410-12.02 (3) (b), providing an exception to the certification requirement of reg-

---

[1] CAA argues that, by reversing the grant of summary judgment against Dr. Moorehead, the Court of Appeals found that there are issues of fact as to whether he was responsible for directing nurse Castro in administering the anesthesia. On the contrary, the Court of Appeals recognized that Dr. Moorehead disclaimed responsibility for the anesthesia procedure but found that Dr. Moorehead might be liable for failure to inquire as to, or satisfy himself as to, the qualifications of those assisting him in the operating room. Again, it should be noted that certiorari was not granted to determine whether Dr. Moorehead had established that he could assume that the person administering anesthesia was qualified to do so.

istered nurse anesthetists where a registered professional nurse "is duly enrolled as a bona fide student pursuing a course in a nurse anesthesia program . . . insofar as the administering of anesthesia is confined to the educational requirements of the course and *under direct supervision of an anesthesiologist or a certified registered nurse anesthetist.*" (Emphasis supplied.) Without determining the validity of this rule, it is clear that it requires "direct supervision" by an anesthesiologist or a CRNA and no such "direct supervision" was provided here. Thus this rule cannot justify violation of the statute.

CAA also contends that OCGA §§ 43-34-102 (4) and 43-34-103 (d), defining and setting out the duties of a physician's assistant, show that CAA met the supervision requirement. OCGA § 43-34-102 (4) provides: " 'Physician's assistant' means a skilled person qualified by academic and practical training to provide patients' services not necessarily within the physical presence but *under the personal direction or supervision* of the applying physician." OCGA § 43-34-103 (d) states: "A physician's assistant shall be allowed to perform his duties only in the principal offices of the applying physicians, which shall be those public or private places or health facilities where the applying physician regularly sees patients, provided that nothing in this article shall preclude a physician's assistant from making house calls and hospital rounds, serving as an ambulance attendant, or *performing any functions performed by the applying physician which the physician's assistant is qualified to perform.*" (Emphasis supplied.) CAA argues that supervision of student nurse anesthetists is one of the functions properly delegated to a physician's assistant trained in anesthesia. We disagree.

OCGA § 43-26-9 (b), supra, requires that a *certified* registered nurse anesthetist must be under the "direction and responsibility of a duly licensed physician. . . ." It follows that a *student* cannot lawfully administer anesthesia under supervision of a physician's assistant. It is apparent from the record before us that no supervising anesthesiologist, necessary under all of the pertinent statutes and rules cited to us, was present or even aware of the administration of anesthesia to Mrs. Worthy. Dr. Cortes was the first and only anesthesiologist to respond to the emergency, and he came on the elevator from the second floor to the seventh floor operating room where Mrs. Worthy was being treated. Thus, the Court of Appeals did not err by failing to take specific cognizance of the foregoing rule or laws.

2. The defendants urge that OCGA § 43-26-9 (b), supra, is a licensing statute which does not establish a standard of conduct constituting ordinary care, and hence its violation cannot constitute negligence per se. They rely on *Andrews v. Lofton,* 80 Ga. App. 723 (57 SE2d 338) (1950), and *Fielding v. Driggers,* 126 Ga. App. 365 (190 SE2d 601) (1972).

In *Andrews*, the defendant performed a tonsilectomy, resulting in a child's death. On appeal, it was held that certain allegations that the defendant held himself out falsely as being a doctor and surgeon, when in fact he had no license to practice medicine, should have been stricken on special demurrer. The issue of negligence per se was not involved as such. In sustaining the special demurrers, the Court of Appeals held that the issue was whether the defendant exercised the requisite care and skill in operating on and treating the patient, and whether such treatment was the proximate cause of the patient's death. Defendants urge that if nurse Castro had held herself out as an anesthesiologist when in fact she had no such license, *Andrews* would be directly in point.

We disagree that OCGA § 43-26-9 (b) is simply a licensing statute, and that it does not establish a standard of conduct, and we therefore find *Andrews* to be inapposite. Although OCGA § 43-26-9 (b) does not establish a standard of conduct as to what anesthesia plan shall be used under which conditions, it nevertheless establishes a standard of conduct constituting ordinary care, and hence it is unlike the licensing requirement at issue in *Andrews*.[2]

The standard of conduct established by OCGA § 43-26-9 (b) is that anesthesia may not lawfully be administered by a certified registered nurse anesthetist except under the direction and responsibility of a duly licensed physician with training and experience in anesthesia. As we have found, nurse Castro was not certified and such direction and responsibility was absent here. Moreover, a jury would be authorized to find from plaintiffs' expert's testimony that if such direction and responsibility had been provided to, or sought by, nurse Castro, an endotracheal tube would have been used instead of a mask, and the patient would have been properly oxygenated.

In *Fielding v. Driggers*, supra, 126 Ga. App. 365, also relied upon by defendants, two 15-year-old plaintiffs riding a motorcycle were rear-ended by defendants' truck. The jury found for the defendants. The court held that it was error for the trial court to refuse to charge that the motorcycle driver, who had only a learner's license, was not guilty of negligence per se unless the absence of a proper license had a proximate causal connection to the collision. The court reasoned that the absence of a driver's license is irrelevant and inadmissible "unless there is a proximate causal connection" with the collision and that the failure to so charge was error. In our view, by emphasizing that proximate cause is an element which must be found by the jury in addition to negligence per se, *Fielding* supports the result reached

---

[2] In this connection, we have considered *Leahy v. Kenosha Memorial Hosp.*, 118 Wis.2d 441 (348 NW2d 607) (1984), and find the statute there involved to be definitional only.

here.

A statute may create a duty recognized by law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks, the breach of which constitutes what is sometimes called "negligence." Prosser & Keeton on Torts, 5th ed., § 30 (1984). Plaintiff must still prove proximate cause and actual damage in order to recover on a cause of action for "negligence." Prosser, supra. The Restatement of the Law, Torts 2d, § 288 B, comments a and b, recognizes that even when negligence per se has been shown, proximate cause must still be proved. See also Prosser, supra at p. 230; *Fielding v. Driggers*, supra, 126 Ga. App. 365. That is what we have here; the trial court has reserved the issues of proximate cause and damages.

Other statutes, such as the requirement that a motorist stop at a stop sign or red light, may create a duty, the breach of which is inextricable from the proximate cause of the damage, such as an intersection collision. It does not follow that, in order to have negligence per se, proximate cause must be inextricable from the breach of duty.[3] Upon the trial of this case, the trial court should use care when referring to negligence per se to charge the jury as to the additional requirement of proximate cause in connection with such negligence.

3. We also affirm the partial grant of summary judgment as to the hospital for the reasons stated in the Court of Appeals' opinion. *Central Anesthesia Assoc. v. Worthy*, supra at pp. 154-55. We do not read that portion of the opinion as holding that hospitals are liable for the negligence of independent professionals using the hospital's premises. We read it as holding, however, that a hospital has a duty to its patients not to lead them to believe that anesthesia will be administered under the direct supervision of an anesthesiologist and then knowingly permit violations of OCGA § 43-26-9 (b), supra, by an anesthesiology school operated on its premises by an anesthesiology group to which the hospital has entrusted its anesthesiology services.

In addition, we reject nurse Castro's contention that she should not be held to the standard of care and skill of a certified registered nurse anesthetist, but only to the standard of care and skill of a second year student nurse anesthetist. Compare *Andrews v. Lofton*, supra.

*Judgments affirmed. All the Justices concur.*

---

[3] As the Court of Appeals noted, in order for a violation of a statute to be negligence per se, it is sufficient if the violation is capable of having a causal connection with the injury and damage inflicted. *CAA v. Worthy*, supra, 173 Ga. App. at 153. It is not essential that the injury inevitably flow from the violation.

DECIDED SEPTEMBER 4, 1985 —
REHEARING DENIED SEPTEMBER 25, 1985.

*Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler, Benjamin S. Williams, K. Marc Barre, Jr.,* for Central Anesthesia Associates.
*Smith, Gambrell & Russell, David A. Handley, Hugh M. Worsham, Jr.,* for Castro.
*Hart & Sullivan, George W. Hart, Lawrie E. Demorest,* for Moorehead.
*Powell, Goldstein, Frazer & Murphy, Daryll Love, John A. Gilleland,* for Executive Committee of Baptist Convention of Georgia.
*Lokey & Bowden, Gerald F. Handley, Gary Hill, Hurt, Richardson, Garner, Todd & Cadenhead, J. Robert Persons,* for Worthy.