McFadden, Judge.
A jury found Goldstein, Garber & Salama, LLC (“GGS”), a dental practice, liable to J. B. on the theory that GGS’s negligence resulted in her being sexually assaulted by Certified Registered Nurse Anesthetist Paul Serdula while she was under anesthesia at GGS’s office, and the trial court entered judgment on that verdict. On appeal, GGS contends (1) that the trial court erred in denying its motion for directed verdict because J. B. did not establish that GGS was liable *417 under either a theory of negligence per se or professional negligence; (2) that the trial court erred in making numerous evidentiary rulings; and (3) that the jury’s assignment of no fault to Serdula on the verdict form requires a new trial. We find, however, that the trial court did not err either in allowing the jury to decide the issue of GGS’s liability or in her evidentiary rulings, and that GGS has waived its challenge to the jury’s verdict. Accordingly, we affirm.
1. Facts.
We review the judgment entered by the trial court after approval of a jury verdict using the “any evidence test, absent any material error of law.” Boston Men’s Health Center v. Howard, 311 Ga. App. 217, 218 (715 SE2d 704) (2011) (punctuation omitted). So viewed, the record reflects that on September 16, 2009, J. B. underwent a three-phase dental procedure at GGS. In one phase of the procedure, Dr. Maurice Salama surgically installed a post for a tooth implant. Nurse Serdula administered anesthesia to J. B. for this phase. In a subsequent phase, Dr. David Garber placed a temporary dental prosthetic device in place of the future implant.
Between the conclusion of Dr. Salama’s surgical procedure and the beginning of Dr. Garber’s cosmetic procedure, J. B. remained in a heavily sedated state for approximately two hours. At some point during this period, J. B. was left alone with Serdula, who made three brief video recordings of her: one in which he looked down her shirt at her breasts, another in which he moved her underwear to reveal her vagina, and a third in which he placed his penis between her lips. These videos of J. B. were later discovered when Serdula’s hidden cell phone was found recording employees in GGS’s office restroom. Examination of the phone also revealed video recordings of Serdula sexually molesting other anesthetized patients. Serdula eventually pleaded guilty to numerous charges related to the vile acts he perpetrated against J. B. and other victims, and he was sentenced to life in prison.
J. B. sued GGS, asserting, among other things, that GGS was liable for negligence per se and professional negligence. The case proceeded to trial, at which expert evidence was presented that GGS had violated certain statutory requirements for dentists supervising certified registered nurse anesthetists and had violated certain standards of care for monitoring patients under anesthesia. The trial court denied GGS’s motion for directed verdict, and the jury awarded $3.7 million to J. B. and apportioned 100 percent of the liability to GGS and none to nonparty Serdula. (J. B. had initially sued Serdula, but voluntarily dismissed him from the action before trial.)
2. Directed verdict.
GGS argues that the trial court erred in denying its motion for directed verdict because J. B. did not prove liability by negligence per *418 se or professional negligence. GGS argues that there was not evidence to show the proximate cause required for both causes of action. It further argues that J. B.’s negligence per se claim fails because the statute at issue did not intend to prevent the harm she suffered, and that her professional negligence claim fails because the conduct at issue did not involve the exercise of professional judgment and skill. We find no merit in these arguments. There was evidence upon which the jury could find the proximate cause required for both of these causes of action, and GGS’s other arguments related to these causes of action lack merit.
(a) Proximate cause.
We first address proximate cause because it is an element required for both negligence per se and professional negligence. Allen v. Family Medical Center, 287 Ga. App. 522, 524 (1) (652 SE2d 173) (2007); Norman v. Jones Lang LaSalle Americas, 277 Ga. App. 621, 628 (2) (b) (627 SE2d 382) (2006).
No single standard exists to determine proximate causation. Atlanta Obstetrics & Gynecology Group v. Coleman, 260 Ga. 569 (398 SE2d 16) (1990). Instead, as our Supreme Court has explained, “proximate cause is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.” Id. (citation and punctuation omitted). This determination
requires both factfinding in the “what happened” sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. Ordinarily, both determinations are appropriately made by a jury upon appropriate instructions from the judge. The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of “foreseeability”) to the facts.
Id. (citation omitted). Stated another way, questions regarding proximate cause “may only be determined by the courts in plain and undisputed cases.” Ontario Sewing Machine Co. v. Smith, 275 Ga. 683, 686-687 (2) (572 SE2d 533) (2002) (citations and punctuation omitted).
[T]he proximate cause of an injury may be two separate and distinct acts... acting concurrently and... the mere fact that the plaintiff’s injuries would not have been sustained *419 had only one of the acts ... occurred will not of itself operate to limit the other act as constituting the proximate cause.
Granger v. MST Transp., 329 Ga. App. 268, 270 (1) (764 SE2d 872) (2014) (citation and punctuation omitted). While Granger involved two acts of negligence, the rule it sets out applies where, as here, there is a negligent act and an intervening criminal act. Ga. Dept. of Transp. v. Owens, 330 Ga. App. 123, 131 (2) (766 SE2d 669) (2014); Granger, 329 Ga. App. at 270-272 (1).
For an intervening act to become the sole proximate cause of a plaintiff’s injuries, the intervening act must not have been foreseeable by the defendant, must not have been triggered by the defendant’s act, and must have been sufficient by itself to cause the injury. If the character of the intervening act was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken.
Zaldivar v. Prickett, 297 Ga. 589, 601-602 (2) (774 SE2d 688) (2015) (citations and punctuation omitted; emphasis supplied); see also Ontario Sewing Machine Co., 275 Ga. at 686 (2). Moreover, J. B., the plaintiff in this case,
need not prove that [GGS] could foresee the precise manner in which [someone took advantage of her vulnerable state while anesthetized]. The foreseeability analysis is not that specific: the relevant inquiry is not whether the exact intervening . . . act was foreseeable, but whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result.
Granger, 329 Ga. App. at 271 (1) (citation and punctuation omitted). And as with the broader question of proximate cause, “the question of reasonable foreseeability of a criminal act is generally for a jury’s determination rather than... adjudication by the courts.” Sturbridge Partners v. Walker, 267 Ga. 785, 786 (482 SE2d 339) (1997) (citation and punctuation omitted).
This is not a plain and undisputed case suitable for adjudication by the courts. The evidence does not show, as a matter of law, that GGS could not have reasonably anticipated that its patient might be victimized if left sedated to a medically-unjustifiable degree and for medically-unjustifiable amount of time without proper supervision. *420 The record in this case is “replete with factual disputes [that pertain to the foreseeability of the intervening act] and the legal inferences to be drawn from those facts.” Atlanta Obstetrics & Gynecology Group, 260 Ga. at 570 (footnote omitted).
The evidence must be viewed in the light most favorable to J. B. See Mathews v. Cloud, 294 Ga. 415, 416 (1) (754 SE2d 70) (2014) (in reviewing whether trial court erred in denying motion for directed verdict, we construe evidence in light most favorable to prevailing party). So viewed, the evidence showed that Serdula sedated J. B. at an unnecessarily deep level and for two hours more than necessary. This not only rendered her a more vulnerable target, but also constituted a violation of the standard of care and placed her at unnecessary risk of medical complications, which fortunately did not materialize.
The evidence, viewed most favorably to J. B., also showed that the dentists purporting to supervise Serdula were not qualified or competent to do so. They had not undergone the training or earned the certifications required of dentists who would supervise nurse anesthetists, see OCGA § 43-11-21.1 (governing qualifications required for dentist to supervise certified registered nurse anesthetist administering general anesthesia), which an expert witness opined rendered them unable to recognize J. B.’s level of sedation. They did not know how to read an anesthesia chart, and they depended upon Serdula to make decisions regarding J. B.’s anesthesia.
This evidence created jury questions as to whether it was foreseeable that the GGS dentists’ failure to discharge their statutory duties and professional obligations would make J. B. vulnerable to the predation she suffered. See Ontario Sewing Machine Co., 275 Ga. at 687 (2) (finding jury questions regarding the reasonableness of sewing machine manufacturer’s recall and the foreseeability of plaintiff’s failure to comply with it).
It is true, of course, that most anesthetized patients are not assaulted. And there was no evidence that GGS knew of Serdula’s previous assaults on patients. We are not persuaded, however, that the relatively uncommon nature of Serdula’s intervening acts compels a determination that GGS could not reasonably have foreseen them. In Medical Center Hosp. Auth. v. Cavender, 331 Ga. App. 469 (771 SE2d 153) (2015), and Brown v. All-Tech Investment Group, 265 Ga. App. 889 (595 SE2d 517) (2004), we stressed the unusual nature of workplace shooting incidents to hold that those incidents were not reasonably foreseeable as a matter of law. Cavender, 331 Ga. App. at 475-476 (1) (a); Brown, 265 Ga. App. at 895-896 (1). But unlike those cases, which concerned claims of ordinary negligence and premises *421 liability, this case involves claims of negligence per se and professional negligence based on violations of statutory requirements and professional standards that address the specific needs and vulnerabilities of an anesthetized patient. Expert testimony was presented that the dental profession is aware that assaults like the one J. B. suffered do occur and actively seeks to prevent them. There was testimony, for example, that sexual assaults and molestation are considered “never events” in the medical community — occurrences that are preventable and should “never” happen. And there was expert testimony that the requirement for monitoring an anesthetized patient existed to safeguard patient safety, among other reasons.
Given the specific statutory requirements and professional standards that exist to protect anesthetized patients, we do not believe that the abuse of an anesthetized patient is “so unusual, contrary to ordinary experience, and rare that no reasonable jury could find [GGS] should have guarded against [such abuse].” Cavender, 331 Ga. App. at 475 (1) (a) (citation and punctuation omitted; emphasis supplied). We should not substitute our judgment for that of the jury as to whether proximate cause existed in this case.-
(b) Negligence per se.
In addition to arguing that proximate cause did not exist as a matter of law, GGS also argues that the trial court should not have permitted J. B.’s negligence per se claim to go to the jury because OCGA § 43-11-21.1, the statute GGS violated, was not intended to prevent the type of injuries she suffered. See OCGA § 51-1-6 (when law requires person to “perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby”); McLain v. Mariner Health Care, 279 Ga. App. 410, 411 (2) (631 SE2d 435) (2006) (generally, plaintiff may assert claim of negligence per se arising from violation of statute if, among other things, “the harm complained of was the same harm the statute was intended to guard against”). We disagree.
OCGA § 43-11-21.1 governs the qualifications required for a dentist to supervise a certified registered nurse anesthetist administering general anesthesia. While OCGA § 43-11-21.1 does not list the harms it intends to guard against, its requirements, among other things, address a dentist’s ability to competently supervise a certified registered nurse anesthetist. There was evidence that the GGS dentists did not meet these statutory requirements and were unable to recognize J. B.’s inappropriate level of sedation.
*422 And the legislative intent behind this statute is set out expressly in another Code section within the chapter: “[S]uch unlicensed activities as are mentioned in this chapter [including a dentist without proper qualifications allowing a certified registered nurse anesthetist to administer anesthesia] are a menace and a nuisance dangerous to the public health, safety, and welfare.” OCGA § 43-11-2 (e) (emphasis supplied). This broad language encompasses unreasonable risks. Cf. Central Anesthesia Assoc. v. Worthy, 254 Ga. 728, 732 (2) (333 SE2d 829) (1985) (similar anesthesia statute applying to doctors serves to protect others against unreasonable risks); Groover v. Johnston, 277 Ga. App. 12,16 (1) (b) (625 SE2d 406) (2005) (statute permitting doctors to delegate to nurses with specific certifications the authority to order certain drugs, treatments, and diagnostic studies, and which did not explicitly state a purpose, created a “duty recognized by the law to protect patients against unreasonable risk”). Contrary to the view expressed by Judge Dillard in his dissent, this language encompasses both medical and nonmedical dangers that could arise where, as here, a dentist is incapable of adequately supervising a certified registered nurse anesthetist, including the increased risk of a patient to abuse when the patient is placed under a greater level of sedation than necessary for a greater amount of time than necessary. See Brown v. Belinfante, 252 Ga. App. 856, 861 (1) (557 SE2d 399) (2001) (provisions of Georgia Dental Act serve to “protect [ ] the health and welfare of patients who submit themselves to the care of dentists, by guarding against injuries caused by inadequate care or by unauthorized individuals”).
(c) Professional negligence.
GGS argues in the alternative that this is not a professional negligence case. Because this case does not concern an exercise of professional judgment and skill required for a claim of professional negligence, GGS argues, J. B. must prove all the elements of a claim of ordinary negligence — including that Serdula’s crimes were foreseeable. The argument is without merit. “An action for professional negligence . . . exists when the plaintiff’s claim addresses the propriety of a professional decision rather than the efficacy of conduct in the carrying out of a decision previously made.” King v. Dodge County Hosp. Auth., 274 Ga. App. 44, 45-46 (616 SE2d 835) (2005) (citation and punctuation omitted). J. B.’s professional negligence claims address the propriety of the professional decisions made by GGS regarding the treatment and care provided to its sedated patients, and expert evidence was submitted as to the professional standards that governed these decisions.
*423 3. Evidentiary rulings.
(a) Evidence of prior assaults committed by Serdula.
GGS argues that the trial court erred in permitting evidence of other assaults perpetrated by Serdula on GGS patients but excluding evidence of assaults perpetrated by him on patients of health-care providers other than GGS. J. B. correctly points out, however, that the trial court initially excluded all evidence of Serdula’s other assaults. See OCGA § 24-4-403. She later permitted the evidence of other assaults on GGS patients for the purpose of impeachment after one of the GGS dentists testified that GGS never left an anesthetized patient with fewer than two people in attendance. See OCGA § 24-6-621. We discern no abuse of discretion. See Rivers v. K-Mart Corp., 329 Ga. App. 495, 496 (1) (765 SE2d 671) (2014) (“As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse.”) (citations and punctuation omitted); Bolah v. Driskell, 318 Ga. App. 405, 407 (734 SE2d 108) (2012) (“A trial court, in its discretion, may admit evidence relevant to the issue of impeachment even if the evidence would not qualify for admission on other grounds.”) (citation omitted).
(b) Evidence of photographs posted on social media.
GGS argues that the trial court erred in excluding, on relevance grounds, parts of an exhibit containing photographs that J. B. had posted on social media in the several years following the assault. Again, we discern no abuse of discretion in this evidentiary ruling. See Rivers, 329 Ga. App. at 496 (1).
(c) Rehearing of evidence.
GGS argues that the trial court erred when, during jury deliberations, she permitted the jury to rehear a portion of evidence setting forth certain of GGS’s responses to requests for admission but did not permit the jury to rehear a portion of the evidence containing certain expert witness testimony. The jury had asked to rehear both portions. Whether to accede to or decline the jury’s request to rehear parts of the evidence was a matter within the trial court’s discretion. Byrd v. State, 237 Ga. 781, 782-783 (1) (229 SE2d 631) (1976). And, as J. B. points out, the fundamental nature of the evidence at issue — party admissions versus expert testimony — differed. See generally Piedmont Aviation v. Washington, 181 Ga. App. 730, 731 (2) (353 SE2d 847) (1987) (“Answers to requests for admissions are not on the same footing in the eyes of the law with other evidence.”) (citation and punctuation omitted). We discern no abuse of discretion in the trial court’s decision to permit the rehearing of the admissions while denying the rehearing of the expert testimony. Compare Scroggins v. *424 State, 237 Ga. App. 122, 125 (5) (514 SE2d 252) (1999) (although ordinarily whether trial court will require court reporter to read former testimony is matter resting within trial court’s sound discretion, trial court nevertheless abused its discretion in denying rehearing of testimony where parties in presence of jury raised a question about substance of that very testimony and serious disagreement existed regarding whether defense counsel had misstated testimony, which could be settled unequivocally by rehearing disputed testimony while causing little, if any, harm).
4. Apportionment.
(a) GGS argues that it is entitled to a new trial because the jury’s verdict form allocated no fault to nonparty Serdula. GGS frames this argument as a challenge to the sufficiency of the evidence to support the judgment. But that is not what it is; it is a challenge to the verdict. And GGS waived appellate review of this challenge by failing to obtain a ruling before the jury was dispersed.
Although the statutory grounds for a new trial do focus on the relationship between the evidence and the jury’s verdict, OCGA § 5-5-20 et seq., a challenge to the sufficiency of the evidence is a challenge to the judgment entered on the verdict, not a challenge to the verdict itself. OCGA § 5-5-40 (a) (motion for new trial to “be made within 30 days of the entry of the judgment”). The question properly before us is not whether the jury’s verdict sufficiently reproaches Serdula, the convicted felon who assaulted J. B., but whether the evidence supports the judgment entered on that verdict. Because Serdula was not a named defendant, the trial court’s judgment could not impose liability upon him. Judgment could be entered only against the sole named defendant, GGS — which it was.
GGS’s sufficiency argument rests on an inference from the verdict form. The jury, GGS infers, found “that the predator was blameless for the injuries he caused.” That does not follow. It is unlikely that the jury was composed of moral imbeciles. It is far more likely that the jury was fully cognizant of Serdula’s blameworthiness, but also cognizant that it was not in their power to add to his punishment. Their duty was to determine if and in what amount civil liability should be imposed on GGS and, in the course of making that determination, to give due consideration to Serdula’s fault. OCGA § 51-12-33 (c). They were apprised of that duty in the charge and on the verdict form. And we must presume that they faithfully discharged that duty.
The verdict form asked the jury to first set out the amount of damages they found appropriate and then to set out percentages of *425 fault assigned to GGS and to Serdula. The form explained that the judge would reduce those damages by any percentage of fault assigned on the form to Serdula.
The jury’s decision to assign no fault to Serdula on the verdict form may reflect their determination that GGS’s liability would not be offset on the basis of Sedula’s fault. If it were clear that the jury had made that determination, we would be faced with the question whether, under OCGA § 51-12-33 (c), the jury was required not only to “consider the fault” of “persons or entities” not party to the action “who contributed to the alleged injury or damages” but also — at least where there is undisputed evidence of such fault — to reduce the liability of the named defendant by some amount. As we explain below in subdivision (b), and as Judge Ray notes in his dissenting opinion, that question is conceptually difficult in this case because it requires the comparison of negligent and intentional acts. See Thomas A. Eaton, Who Owes How Much? Developments in Apportionment and Joint and Several Liability Under OCGA § 51-12-33, 64 Mercer L. Rev. 15, 17 (II) (A) (2012) (prior to 2005 enactment of Georgia’s apportionment statute, “the long-standing rule in Georgia [was] that intent and negligence [were] not comparable”) (discussing principles set forth in Georgia cases suchas Gates v. Navy, 274 Ga. App. 180, 183 (4) (617 SE2d 163) (2005)). And it is a question of first impression.
But it is a question for another day. The verdict may also reflect that, after considering Serdula’s fault and adjusting its award in light of that fault, the jury intended to award J. B. $3,700,000 from GGS and that — perhaps uncomfortable with the complexity of the procedure described in the form — it expressed that intent in a way that ensured the judge would not further reduce the award, but that did not spell out its reasoning.
We cannot tell from looking at the verdict form exactly what was the jury’s intent. Under OCGA § 9-12-4, however, “[v]erdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity.” Consequently,
[e]ven if the verdict is ambiguous and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied. Furthermore, in determining the proper interpretation of a jury verdict and to remove any ambiguity, the trial court may question the jury prior to dis[pe]rsal in order to clarify the jury’s intent.
*426 Anthony v. Gator Cochran Constr., 288 Ga. 79, 80-81 (702 SE2d 139) (2010) (citations and punctuation omitted). See Tucker v. Love, 200 Ga. App. 408, 410 (3) (408 SE2d 182) (1991) (the time to resolve any questions about the jury’s verdict was “when the verdict was returned so that the jury could clarify its meaning”).
It is true, of course, as Judge Ray explains, that if the verdict was void — or if the verdict was ambiguous, but void in all its possible interpretations — then additional deliberations would not have been required. See Anthony, 288 Ga. at 80 (verdict that truly was contradictory and repugnant was void and no valid judgment could be entered on it, regardless of how it arose). In that case, preservation of error would not have been a prerequisite to enumerating as error the entry of judgment on the verdict. Id. Our disagreement with Judge Ray is that we hold at least one of the two possible interpretations of this verdict to be sustainable, while he would hold that both are void.
If she had been persuaded the verdict at issue was improper, the trial court, in her discretion, could have given the jury additional instructions and permitted it to consider the matter again. See Force v. McGeachy, 186 Ga. App. 781, 784 (1) (368 SE2d 777) (1988). GGS, however, did not ask the trial court for any relief that would clarify the verdict or otherwise afford the jury that heard the evidence an opportunity to return an unambiguously proper verdict. See Clifton v. Clifton, 249 Ga. 831, 832 (294 SE2d 518) (1982). Although GGS objected to the verdict form as being “improper and incorrect” because of the jury’s assignment of no fault to Serdula, it did not ask for a ruling on that objection. Instead, GGS stated that it was “just putting that on the record” for purposes of appeal. When the trial court asked whether there was “anything else before I have the jury back and have them released,” GGS did not respond or otherwise object to the trial court dismissing the jury.
It is not enough for a party to object to perceived error. “[I]t is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver.” Olagbegi v. Hutton, 320 Ga. App. 436, 437 (1) (740 SE2d 190) (2013) (citation and punctuation omitted). GGS, however, chose not to obtain a ruling on its objection or otherwise ask the trial court for relief, apparently hoping to seek a new trial with a different jury. “Upon hearing an improper verdict rendered, a litigant should not sit silently by, hoping to gain a retrial by failing to [secure a ruling on its] object[ion].” Clifton, 249 Ga. at 832 (2) (citation omitted); accord Tucker, 200 Ga. App. at 410 (3). By failing to do so, GGS waived appellate review of its challenges to the form of the jury’s verdict. See Davis v. Whitford Properties, 282 Ga. App. 143, 147 (2) (637 SE2d 849) (2006). Cf. Anthony, 288 Ga. at 80-81 (failure to object to void verdict does not *427 waive appellate review of error, but ambiguous verdicts are not void if they are susceptible of a construction that will uphold the verdict).
(b) Nor should we reach GGS’s apportionment argument under the plain error doctrine. That doctrine obtains only if, among other things, a ruling is not merely error but “obviously so.” State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation omitted). Here the issue is one of first impression. Judge Ray’s dissent cites to no authority finding the amount of damages awarded by a jury in a civil case to be plain error, and we are aware of none. And the general rule is that apportionment determinations are the jury’s prerogative. See Scapa Dryer Fabrics v. Knight, 332 Ga. App. 82, 90 (4) (770 SE2d 334) (2015).
The issue is not only novel. It is also difficult. It is difficult because intentional and negligent torts are qualitatively distinct. See Ellen M. Bublick, The End Game of Tort Reform: Comparative Apportionment and Intentional Torts, 78 Notre Dame L. Rev. 335, 376 (2003). Our Supreme Court has implied that it reads the apportionment statute to leave the task of reconciling that distinction to the finder of fact. Answering in the affirmative a certified question whether a jury is “allowed to consider the ‘fault’ of [a] criminal assailant and apportion its award of damages among [a negligent tortfeasor] and [a] criminal assailant, pursuantto OCGA § 51-12-33,” Couch v. Red Roof Inns, 291 Ga. 359 (729 SE2d 378) (2012), the Supreme Court addressed and rejected the plaintiff’s argument “that the [negligent tortfeasor] in this case cannot establish evidence to support any rational basis for apportionment.” Id. at 366 (2). “That,” the Supreme Court held, “is a question of fact not relevant to answering the legal questions set forth in this case.” Id. (citation omitted). Under these circumstances, we should not decide the merits of GGS’s apportionment challenge.

Judgment affirmed.

Barnes, P. J., Ellington, P. J., and Phipps, P. J., concur. Dillard, Ray, and McMillian, JJ., dissent.