300 Ga. 840
FINAL COPY

S16G0744. GOLDSTEIN, GARBER & SALAMA, LLC v. J. B.

HINES, Chief Justice.

This Court granted certiorari to the Court of Appeals in *Goldstein, Garber & Salama, LLC v. J. B.*, 335 Ga. App. 416 (779 SE2d 484) (2015), to determine whether the Court of Appeals erred in concluding that a reasonable jury could find that a third party's sexual molestation of J. B. was an act foreseeable by Goldstein, Garber & Salama, LLC ("GGS"), whether that Court erred in affirming the trial court's denial of GGS's motion for a directed verdict on the issue of negligence per se, and whether GGS waived any objection to the jury verdict's apportionment of fault. Finding that the opinion of the Court of Appeals was erroneous, we reverse its judgment.

Plaintiff/appellee J. B. was injured when certified registered nurse anesthetist ("CRNA") Paul Serdula sexually assaulted her in a surgical suite in the dental practice of defendant/appellant GGS. Serdula was hired by GGS as an independent contractor through anesthesia staffing agency Certified

Anesthesia Providers; in accordance with its standard practice, that agency conducted an independent credentialing process on Serdula prior to placing him in any medical or dental facilities.

On September 16, 2009, J. B. came to GGS's offices for an outpatient dental procedure. Serdula administered anesthesia to J. B. and kept her in a heavily sedated state for approximately two hours, which included a 35-minute break between two phases of her procedure. At some point, J.B. was left alone with Serdula, and Serdula made three brief video recordings of himself sexually molesting her. These videos of J. B., as well as videos of Serdula sexually molesting other anesthetized patients, were later discovered when Serdula's hidden cell phone was found recording employees in GGS's office restroom. Prior to the crimes committed by Serdula against J. B., GGS had no knowledge of anything in Serdula's record that indicated he might sexually molest or otherwise harm a patient.

J. B. filed suit against GGS and Serdula, but withdrew her claims against Serdula after he pled guilty to numerous criminal charges related to his sexual assaults on patients and was sentenced to life in prison; she continued her suit against GGS, including claims for negligence per se and professional

2

negligence.  At trial, a jury found in favor of J. B., and the trial court entered judgment on that verdict. On appeal, the Court of Appeals affirmed the trial court,[1] and this Court granted GGS's petition for a writ of certiorari.  Further facts can be found in the opinion of the Court of Appeals.  *Goldstein*, supra.

1.  The Court of Appeals found that there was evidence from which the jury could find that GGS breached its duties to follow professional standards regarding the extent to which J. B. was anesthetized and to which Serdula was supervised.  "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 272 (1) (578 SE2d 106) (2003) (Citations and punctuation omitted.) Thus, in order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries were proximately caused by the breach of the duty.  Id.  As this Court has stated, when a defendant claims that its negligence is not the proximate cause of the plaintiff's injuries, but that an act of a third party intervened to cause those injuries, the rule is

---

[1] The vote in favor of the majority opinion in the Court of Appeals was 4-3; two dissenting opinions were filed.

3

that an intervening and independent wrongful act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, insulating and excluding the negligence of the defendant.

*Ontario Sewing Machine Co., Ltd. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) (Citation and punctuation omitted.) But, this rule does not insulate the defendant "if the defendant had reasonable grounds for apprehending that such wrongful act would be committed." Id. (Citation and punctuation omitted.) Stated differently,

if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

Id. (Citation and punctuation omitted.) "The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." *Atlanta Obstetrics and Gynecology Group v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990) (Citation and punctuation omitted.) And, a general rule of proximate cause is that "[a]

4

wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience." *Johnson*, supra at 273 (1) (Citation and punctuation omitted).

It is unquestioned that Serdula's criminal acts intervened between any breach of duty by GGS and the injuries to J. B., and that those injuries would not have occurred without his criminal acts. Thus, the question is whether Serdula's intervening criminal acts were foreseeable to GGS.

The Court of Appeals noted that "there was no evidence that GGS knew of Serdula's previous assaults on patients," *Goldstein*, supra at 420 (2) (a), and cited no evidence indicating that GGS should have known of them.[2] Rather, the Court of Appeals noted that the level of anesthesia she was given "rendered her a more vulnerable target" to sexual assault, id., and stated that, given that the dental community is aware that sexual assaults of anesthetized patients do occur, and that the profession considers them to be events which should never happen,

---

[2] Generally, "[c]onsonant with general tort principles . . . an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Munroe v. Universal Health Svcs., Inc.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004) (Citation and punctuation omitted.). It is in this context that foreseeability in this case must be evaluated.

the Court was "not persuaded . . . that the relatively uncommon nature of Serdula's intervening acts compels a determination that GGS could not reasonably have foreseen them." Id. However, the fact that the dental profession is aware that sexual assaults of sedated patients can occur, and recognizes that such events should never happen, does not alone convert GGS's alleged breach of its duty to properly supervise Serdula into liability on GGS's part, nor does GGS's failure to ensure that a recovering patient be attended by a second appropriately trained person.[3] Rather, for any such breach to be considered the proximate cause of J. B.'s injuries, Serdula's criminal acts must be the "probable or natural consequences" of that breach, *Ontario Sewing Machine*, supra, and it must be the case that those criminal acts could "reasonably have been anticipated, apprehended, or foreseen" by GGS. Id. The evidence here simply does not show that Serdula's acts can be so considered.[4]

---

[3] There was testimony that GGS's surgical area is open to busy hallways, GGS's common practice was that a recovering patient is accompanied by a dental assistant, usually trained in emergency and CPR procedures, and that the dental assistant would leave the patient for only brief periods of time. See also *Goldstein*, supra at 432-434 (Dillard, J., dissenting).

[4] Although J. B. cites *Georgia Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770 (403 SE2d 235) (1991), for the proposition that injuries proximately caused in a medical setting can include results that may be foreseeable that are not medical in nature, that opinion does not inform this case. In that case, plaintiffs claimed their decedent father was improperly administered certain central nervous system drugs, causing him to go "berserk" and attack certain hospital personnel with a knife, in the course of which attack he was shot and killed by police officers. The hospital argued that the

6

Although questions of the foreseeability of intervening criminal acts are usually for the factfinder, when, as here, the evidence on the matter is plain and undisputable, it is properly for the court's adjudication. *Munroe v. Universal Health Svcs., Inc.*, 277 Ga. 861, 866 (2) (596 SE2d 604) (2004).

Accordingly, the trial court should have granted GGS's motion for directed verdict, it was error for the Court of Appeals to hold otherwise, and its judgment must be reversed.

2. As the Court of Appeals recognized in its opinion, proximate cause is an element that must be proved in cases involving both professional negligence and negligence per se. *Goldstein*, supra at 418 (2) (a). See *Chritser v. McFadden*, 277 Ga. 653, 655 (593 SE2d 330) (2004); *Johnson*, supra; *Central*

---

decedent's death "must, as a matter of law, be considered the proximate result of his own conduct in ignoring the commands of the police officers to drop his knife and continuing to advance with knife in hand upon the police officers." (Punctuation omitted.) Id. at 776 (9). The Court of Appeals rejected that argument, noting that it was "established without dispute . . . that the decedent's violent conduct was not criminal but was in fact the product of a drug-induced delirium or psychosis," and specifically distinguished the situation presented therein from precedent involving an intervening criminal act. Id. at 777 (9). See *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 66-68 (2) (d) (397 SE2d 576) (1990) (noting that the intervening criminal act in that case broke the causal chain between the defendant's breach of its duty and the plaintiff's injury, and finding, as a matter of law, that the suffered injury was "too remote for the law to countenance a recovery." (Citation and punctuation omitted.) Here, the intervening criminal acts break the causal chain between GGS's breach of any duty and J.B.'s injuries.

*Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (1) (333 SE2d 829) (1985).[5]

Even if a reasonable jury could find that a breach of duty by GGS could be considered the proximate cause of J. B.'s injuries, but see Division 1, supra, the Court of Appeals erred in its analysis regarding negligence per se. As that Court noted, J. B.'s claim of negligence per se rested upon GGS's violation of permitting requirements of OCGA § 43-11-21.1,[6] which governs when dentists

---

[5] "[N]egligence per se supplies only the duty and breach of duty elements of a tort, and the plaintiffs must still prove a causal connection (proximate cause) between the breach of this statutory duty and the injuries sustained by [the plaintiffs], as well as their damages." *Central Anesthesia*, supra at 730 (1).

[6] OCGA § 43-11-21.1 reads:

(a) No dentist shall administer general anesthesia on an outpatient basis unless such dentist has been issued a permit by the board under the conditions specified in this Code section. Such permit shall be subject to biennial renewal at the time the dentist is required to renew his or her license to practice dentistry. It shall be the responsibility of the dentist to provide such information as the board may require and to pay the separate initial issuance and renewal fees for the permit as may be established by the board.

(b) No dentist shall be issued a permit under this Code section nor have such permit renewed unless the board has received satisfactory evidence that such dentist:

(1) (A) Has successfully completed a minimum of one year of advanced training in anesthesiology and related academic subjects beyond the undergraduate dental school level at an institution accredited by the Commission on Dental Accreditation of the American Dental Association or its successor agency or by a nationally recognized health care accreditation body for hospitals; or

(B) Is a diplomate of the American Board of Oral and Maxillofacial Surgery, is a member of the American Association of Oral and Maxillofacial Surgeons, or is a fellow of the American Dental Society of Anesthesiology;

(2) Utilizes a properly equipped facility for the administration of general anesthesia, including physical plant and equipment which has been evaluated and certified by an on-site examination; and

(3) Has demonstrated to the satisfaction of the board or any designee

thereof proficiency in administering general anesthesia on a patient or patients in the dentist's office in a safe and effective manner.

(c) In enforcing the provisions of this Code section, the board is authorized to designate qualified persons to perform the on-site examination and is further authorized to provide by rule or regulation for standards for physical plant, equipment, and personnel to be utilized in the administration of general anesthesia.

(d) (1) This Code section shall not prohibit a person who is duly licensed to practice medicine in this state and who is a member of the anesthesiology staff of an institution classified as a hospital and issued a permit as an institution under Code Section 31-7-1 from administering general anesthesia in a dental facility, except that such anesthesiologist shall remain on the premises of the dental facility until any patient given a general anesthetic by such anesthesiologist is stabilized and has regained consciousness.

(2) This Code section shall not prohibit a person who is duly licensed as a certified registered nurse anesthetist in this state from administering general anesthesia in a dental facility, provided that such anesthesia is administered under the direction and responsibility of a dentist duly permitted under this Code section and that such nurse anesthetist shall remain on the premises of the dental facility until any patient given a general anesthetic by such nurse anesthetist is stabilized and has regained consciousness.

(e) The board or its authorized designee may, upon reasonable notice, conduct an on-site inspection of the facility, equipment, and personnel of a dentist issued a permit under this Code section to determine if the standards of paragraph (2) of subsection (b) of this Code section are being maintained.

(f) The board may, upon proper application, grant a provisional permit to any dentist who meets the requirements of subparagraph (b)(1)(A) or (b)(1)(B) of this Code section, but such permit shall expire six months after its issuance or upon the board's determination by site visit that the requirements of paragraph (2) or (3) of subsection (b) of this Code section have not been met, whichever occurs earlier. The provisional permit may be renewed once, at the discretion of the board, for a period not to exceed six months following the original expiration date.

(g) A permit issued under this Code section may be revoked or not renewed if the board determines that the dentist holding such permit no longer meets any requirement of subsection (b) of this Code section. The board shall provide notice and opportunity for hearing under Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," in any case in which it revokes or refuses to renew a permit, provided that summary action regarding such permit shall

may administer general anesthesia, or have it administered by a CRNA under a dentist's supervision. Although it was admitted that the dentists who were employees or agents of GGS did not have the permits required by OCGA § 43-11-21.1 (a), that alone does not establish negligence per se. Rather, "negligence per se arises when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against." *Murphy v. Bajjani*, 282 Ga. 197, 200 (2) (647 SE2d 54) (2007) (Citation omitted.)

Although J. B. falls within the class of persons intended to be protected by OCGA § 43-11-21.1, the question is whether sexual assault is the type of harm the statute is intended to guard against. Although nothing in OCGA § 43-11-21.1 suggests that such harm is contemplated thereby, the Court of Appeals looked elsewhere in the same chapter of the Code in which OCGA § 43-11-21.1 is found, and identified purported authority for its finding that sexual assault is a harm that OCGA § 43-11-21.1 "was intended to guard against." *Murphy*,

---

be authorized under Code Section 50-13-18.

supra.  In that regard, the Court of Appeals noted that OCGA § 43-11-2 (e)[7]

---

[7] OCGA § 43-11-2 reads:

(a) A board to be known as the Georgia Board of Dentistry is created. The board shall consist of 11 members to be appointed and commissioned by the Governor as provided in subsection (b) of this Code section.

(b) (1) Nine members of the board shall be dentists and shall be appointed as follows: The members of the board who are dentists serving on July 1, 1981, shall continue to serve out their respective terms of office. As each such member's term of office subsequently expires, the Governor shall appoint a new member who shall be a practicing dentist licensed by this state. The Georgia Dental Association may, at each annual meeting, nominate four reputable practicing dentists for each expired or next expiring board member's term; and, from each group of four dentists so nominated, the Governor may appoint one as the new member of said board.

(2) One member of the board shall be a dental hygienist who is not a dentist, who is a resident of this state, and who is a practicing dental hygienist in this state and shall be appointed by the Governor. No one shall be eligible as a dental hygienist member of the board unless he or she is a citizen of this state and has lawfully practiced as a dental hygienist for five or more years at the time of his or her appointment and is not financially interested in, nor connected with, any dental college or dental hygiene school. If such a member ceases to be a resident of this state or ceases practicing in this state, that position on the board shall be deemed vacated. The Georgia Dental Hygienists Association may nominate four reputable dental hygienists who are not dentists for each expired or expiring term; and, from each group of four dental hygienists so nominated, the Governor may appoint one as the new member of the board.

(3) One member of the board shall be a citizen of this state who is not a dentist or a dental hygienist and shall be appointed by the Governor.

(4) Except as otherwise provided in paragraphs (6) and (7) of this subsection, the term of office of each member of the board shall be for five years and until the appointment and qualification of a successor.

(5) Each vacancy on the board shall be filled by the Governor for the unexpired term in the same manner as the original appointment.

(6) The term of the initial member appointed pursuant to paragraph (2) of this subsection shall be for a term of two years beginning July 1, 1978, and ending June 30, 1980.

11

states that "such unlicensed activities as are mentioned in this chapter are a menace and a nuisance dangerous to the public health, safety, and welfare," and

---

(7) The term of the initial member appointed pursuant to paragraph (3) of this subsection shall be for a term of four years beginning July 1, 1978, and ending June 30, 1982.

(c) No one shall be eligible as a dentist member of the board unless he or she is a citizen of this state and has lawfully engaged in the practice of dentistry for five or more years at the time of his or her appointment and is not financially interested in, nor connected with, any dental college.

(d) (1) The dental hygienist member of the board may vote only on matters relating to dental hygiene, administration, and policy which do not directly relate to practical or scientific examination of dentists for licensing in this state.

(2) The citizen member of the board who is not a dentist or dental hygienist may vote only on matters relating to administration and policy which do not directly relate to practical and scientific examination of dentists and dental hygienists for licensing in this state.

(e) The board may bring an action to enjoin any person, firm, partnership, corporation, or other entity who without being licensed or registered to do so by the board engages in or practices the profession of dentistry. The proceeding shall be filed in the county in which such person resides or, in the case of a firm, partnership, corporation, or other entity where the firm, partnership, corporation, or other entity maintains its principal office. Unless it shall be made to appear that such person, firm, partnership, corporation, or other entity so engaging in or practicing dentistry is licensed or registered, the injunction shall be issued, and such person, firm, partnership, corporation, or other entity shall be perpetually enjoined from such activities throughout the state. It shall not be necessary in order to obtain the equitable relief provided in this subsection that the board allege and prove that there is no adequate remedy at law. It is declared that such unlicensed activities as are mentioned in this chapter are a menace and a nuisance dangerous to the public health, safety, and welfare.

found that term was broad enough to encompass the injuries suffered here. *Goldstein*, supra at 422 (2) (b) (Citation, punctuation and emphasis omitted.).

We disagree. Rather, the language of OCGA § 43-11-21.1 shows that its concern is to avoid medical complications that may arise in a dental setting from improper use of anesthesia due to improper training and experience, or inadequate equipment. See OCGA § 43-11-21.1 (b). In this context, the term "health, safety, and welfare" does not implicate the remote, nonmedical injuries suffered by J. B. Indeed, that this is so is evident by examining the precedent that the Court of Appeals cited for its conclusion that the term encompasses essentially all "unreasonable risks"; both *Worthy*, supra, and *Groover v. Johnston*, 277 Ga. App. 12 (625 SE2d 406) (2005), dealt with medical injuries of the sort that the statutes involved were intended to prevent.

Accordingly, the Court of Appeals also erred in denying GGS's motion for directed verdict on the issue of negligence per se, and must be reversed on this basis as well.

3. In light of the foregoing, we need not address whether GGS waived any objection to the jury's apportionment of fault.

Judgment reversed. Melton, P. J., Benham, Nahmias, Blackwell, Boggs,

13

Peterson, and Grant, JJ., and Judge W. Kendall Wynne, Jr., concur. Hunstein, J., not participating.

Decided February 27, 2017 – Reconsideration denied March 30, 2017.

Certiorari to the Court of Appeals of Georgia — 335 Ga. App. 416.

Hawkins Parnell Thackston & Young, H. Lane Young II, Matthew F. Barr; Wiggin and Dana, Jonathan M. Freiman, Tadhg A. J. Dooley, for appellant.

Bird Law Group, William Q. Bird, Alexandria S. Cash, Paul I. Hotchkiss; Houck Regas Reynolds, Michael G. Regas II; Shamp Speed Jordan & Woodward, Jennifer A. Jordan, for appellee.

Hunter Maclean Exley & Dunn, Kirby G. Mason, Allan C. Galis; Emily M. Hetherington; Langdale Vallotton, William P. Langdale III; Charles M. Cork III; Simon Weinstein, amici curiae.